UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 5:13-CV-265-REW |
| v. | ) ) | MEMORANDUM OPINION AND |
| $64,495.00 IN UNITED STATES CURRENCY, | ) ) ) | ORDER |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers Plaintiff's motion for summary judgment. DE #23 (Motion). Claimant, Martha Alday-Montanez, responded in opposition (DE #26), and Plaintiff replied. DE #27 (Reply). For the reasons stated herein, the Court **DENIES** Plaintiff's motion (DE #23). The Government has failed to justify summary judgment under the applicable Rule 56 standards.

**I. Relevant Factual and Procedural Background**

On August 21, 2013, the United States filed a verified complaint *in rem* to obtain forfeiture of $64,495.00 pursuant to 21 U.S.C. § 881(a)(6). DE #1 (Complaint). The complaint, supported by an affidavit from DEA TFO Matthew J. Dawkins, alleges that the currency "was furnished or intended to be furnished in exchange for controlled substances, was proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics." *Id.* at 2 ¶ 6. Specifically, the United States alleges that the money was used by Luis M. Enriquez to facilitate marijuana trafficking or was proceeds of same. The Clerk issued the warrant of arrest in rem (DE #3), which the

1

United States Marshals Service executed on September 9, 2013. DE #4 (Warrant Return). Alday-Montanez, by counsel, answered the Complaint on October 28, 2013, tendering also a verified claim. DE #5 (Answer); DE #6 (Verified Claim). Following a discovery period, the Government filed the instant motion.

Per TFO Dawkins's affidavit,[1] the investigation began when a confidential informant with the Lexington Police Department told Detective Curtsinger that he (the CI) had been to Enriquez's farm and that Enriquez stored marijuana in his barn. DE #1-4 (Dawkins Aff.) at 5 ¶ 9. Later, in December 2012, the CI told Versailles Police Officer Costigan that he (the CI) was present at Enriquez's home when a third-party purchased a 10-pound block of marijuana from "Luis." *Id.* ¶ 10. Police surveilled the residence, though they eventually terminated surveillance because of Enriquez's alleged sensitivity to surveillance efforts. *Id.* ¶ 11.

Per the affidavit, on March 24, 2013, law enforcement in Longview Texas received reports of an abandoned white Ford pick-up truck parked on the street. By the time police officer Jason Hampton responded, the vehicle had been parked there for several hours. Hampton smelled marijuana upon approaching the vehicle. A probable cause search of the truck revealed approximately 20 pounds of marijuana in a black plastic bag behind the driver's seat; officers recovered an additional 66 pounds from a plastic container in the truck bed. All marijuana presented in 1-pound blocks. *Id.* ¶ 12. The truck was registered to Luis Enriquez, P.O. Box 3813, Midway, Kentucky, 40347,

---

[1] The later affidavit from Versailles PD Det. Ford, tendered with the Government's motion, sets forth a similar narrative. DE #23-5 (Ford Aff.). The Court discusses details of that affidavit in the analysis section.

bore license plate number 350 LGS, and was the same vehicle Kentucky officers observed at Enriquez's Midway residence during surveillance. *Id.* ¶ 13.

Based on the totality of the investigation, officers from the Versailles Police Department obtained and executed a state search warrant at 524 W. Leestown Road, the residence of Luis Enriquez and Martha Patricia Alday-Montanez, on March 26, 2013. *Id.* ¶ 7. As a result of the search, agents seized $64,495 in United States currency,[2] 6 handguns, 10 rifles, and approximately 12.4 grams of marijuana.[3] *Id.* Officers arrested Enriquez and charged him with violations of state law. *Id.* Officers also recovered an empty box for a digital scale and an empty box for gallon-sized plastic bags in a "burn pile" behind a shed behind the residence. *Id.* ¶ 8. Within the shed, agents found "a cutting device with a spool of plastic stretch wrap," which TFO Dawkins associated with packaging large quantities of marijuana. A search of the kitchen area and carport revealed ledgers with names and suspected drug weights. *Id.*

During an interview with law enforcement, Enriquez allegedly advised officers that the money came from accounts that United Bank had closed due to Enriquez's undocumented status. *Id.* ¶ 15. He further indicated that, in light of his immigration status, he was unable to open an account at a different financial institution. *Id.*

Federal authorities eventually charged Enriquez with a violation of 18 U.S.C. § 922(g)(5)(A), or possession of a firearm by an illegal alien. Enriquez ultimately pled guilty to the charge, and Chief Judge Caldwell sentenced him to 24 months of

---

[2] Agents recovered the currency from a variety of locations: inside a beverage cooler at the back of the house; inside a baby wipes container in a child's room; inside a diaper bag and Enriquez's wallet; and inside clothing ($40,000 was bundled/wrapped and concealed inside a sweatshirt pouch in the hall closet and $10,610 was concealed in a pocket in men's cargo pants in the master bedroom closet). DE #1-4 (Dawkins Aff.) at 7 ¶ 14.
[3] Agents discovered the 12.4 grams of marijuana in a kitchen drawer. *Id.*

imprisonment. Enriquez also forfeited his interest in a number of identified firearms and ammunition. *See generally United States of America v. Luis Manuel Enriquez*, 5:13-CR-76-KKC-REW (E.D. Ky.). Neither state nor federal authorities convicted Enriquez of a controlled substance violation relative to the instant investigation.

This civil forfeiture action targets the monies seized during the March 26, 2013 warranted residential search. Plaintiff now seeks summary judgment, and the motion is ripe for review.

**II. Standard of Review**

A federal civil in rem forfeiture action draws from several procedural sources. The claim origin is statutory (in this case, 21 U.S.C. § 881(a)(6)) and CAFRA, 18 U.S.C. § 983). The particular framework of the amended Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions governs specific pleading and claim mechanics. However, the federal rules generally continue to apply except where inconsistent with the Supplemental Rules. *See United States v. $50,800.00 in U.S. Currency*, No. CV-10-2004-PHX, 2011 WL 2434225, at *1 (D. Ariz. June 16, 2011) ("Federal civil in *rem* forfeitures are governed by the Federal Rules of Civil Procedure."); *see also* Supplemental Rule G(1) (incorporating and assuring that "Federal Rules of Civil Procedure also apply" to forfeiture actions in rem except to extent the Supplemental Rules "address an issue."); *United States v. $8.221,877.16 in U.S. Currency*, 330 F.3d 141, 159-50 (3d Cir. 2003) ("The Civil Rules therefore also apply to in rem proceedings, but only to the extent that they are not 'inconsistent with' the Supplemental Rules[.]"). Thus, the summary judgment mechanics of Rule 56 apply to (and in conformity with) the specific substantive steps of a CAFRA action. *See, e.g., United States v. 939 Salem St.,*

*Lynnfield, Mass.*, 917 F. Supp. 2d 151, 154-55 (D. Mass. 2013) ("Summary judgment may be entered in an *in rem* civil forfeiture action where the moving party satisfies the familiar Rule 56 standard.").

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). The Rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552. If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted).

A fact is "material" if the underlying substantive law identifies that fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 Fed. App'x 428, 444-45 (6th Cir. 2006). That is, the Court only considers information if a litigant could properly present it in a form that would be admissible at trial.

Under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, the United States must establish by a preponderance of the evidence "that the property is subject to forfeiture." *Id.* § 983 (c)(1). In making its case, the Government can rely on evidence uncovered after filing the complaint. *Id.* § 983(c)(2). For any property the Government contends "was used to commit or facilitate the commission of a criminal offense" or "was involved in the commission of a criminal offense," it must additionally establish a "substantial connection between the property and the offense." *Id.* § 983(c)(3).[4] The Government can prove a substantial connection by either direct or circumstantial evidence. *United States v. $291,828.00 in U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008). The United States "need not prove that there is a substantial connection between the property and any specific drug transaction. Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking." *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *see also United States v. $118,170.00 in United States Currency*, 69 Fed. App'x 714, 717 n.1 (6th Cir. 2003) (unpublished).

CAFRA prohibits forfeiture of an innocent owner's interest in the property. *Id.* § 983(d)(1). A claimant, placed in a position to respond, bears the burden of proving innocent ownership by a preponderance. *Id.* If the property existed "at the time the illegal conduct giving rise to forfeiture took place," "innocent owner" is defined as an

---

[4] Per the CAFRA language, the added requirement does not apply to the extent the Government pursues a proceeds theory. *See United States v. $118,170.00 in U.S. Currency*, 69 Fed. App'x 714, 717 n.1 (6th Cir. 2003) ("[T]he Government need not prove a substantial connection to a specific drug transaction when it advances a drug proceeds theory.").

owner who "did not know of the conduct giving rise to the forfeiture" or "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." *Id.* § 983(d)(2)(A).

The Court must assess, then, whether the United States has met its initial burden under CAFRA and Rule 56, by demonstrating that there are no genuine disputes of material fact as to the basic forfeitability of the res. *See 939 Salem St.*, 917 F. Supp.2d at 155 (describing "procedural pavane" of CAFRA summary judgment and phrasing initial burden as showing "that the property at stake is subject to civil forfeiture").

**III. Analysis**

The Government argues that the totality of the circumstances unquestionably proves by a preponderance that the $64,495.00 at issue is either the proceeds of or was used to facilitate drug trafficking. DE #23 (Motion); *see also* DE #1 (Verified Complaint). Specifically, the United States contends that the Affidavit from Versailles Police Detective Keith J. Ford,[5] the items seized during the warranted search, Claimant's responses in discovery, and the full balance of the record suffice to establish by a preponderance that the res at issue either facilitated or is the proceeds of drug trafficking. Claimant denies that summary judgment is appropriate, further contending that evidence of legitimate income source and innocent ownership preclude relief to the Government at this juncture. DE #26 (Response). Alday further alleges that the Court should disregard Detective Ford's affidavit on hearsay grounds. *Id.*

---

[5] The United States switched from relying on Dawkins (for the Complaint) to relying on Ford (for the motion). The change has little impact on the analysis, but the Court focuses on Ford.

8

*1. Under Rule 56, the Court disregards Detective Ford's affidavit to the extent it contains hearsay and/or second-hand information.*

In support of its motion, the United States submits an affidavit from Versailles Police Detective Keith J. Ford. DE #23-5. That affidavit relays various details about the underlying investigation, only a small portion of which reflects Detective Ford's personal knowledge. *Id.* Other information is second-hand, and most of the affidavit is plainly inadmissible hearsay.

The Sixth Circuit has not yet expressly determined, post-CAFRA, whether the Government may rely on hearsay to justify forfeiture. Per the Fifth Circuit, the United States can no longer rely on hearsay in civil forfeiture proceedings. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508-10 (5th Cir. 2008); *id.* at 510 ("We therefore agree with the lower courts that have directly addressed this issue and hold that courts may no longer rely on hearsay (absent an exception to the hearsay rule) when deciding the merits of a civil forfeiture proceeding brought under CAFRA. Instead, any affidavits submitted by the parties must be based on personal knowledge."). Other courts, relying on *$92,203 in U.S. Currency*, have adopted this approach. *See United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d 189, 198 n.8 (2d Cir. 2013); *United States v. $45,000.00 in U.S. Currency*, No. 2:12-CV-181-KS-MTP, 2013 WL 5423957, at *3 (S.D. Miss. Sept. 26, 2013) ("Post CAFRA, the Government may not rely on hearsay evidence in obtaining forfeiture and any affidavit submitted by either party must be based upon personal knowledge."); *see also United States v. Currency, U.S., $147,900.00,* 450 Fed. App'x 261, 264 n.2 ("Given that courts routinely permitted hearsay evidence in forfeiture proceedings prior to CAFRA, and only one appellate court has explicitly recognized that hearsay evidence is no longer

admissible following CAFRA, we cannot hold admission of the evidence to be plain error."). *But see United States v. $291,828.00 in U.S. Currency*, 536 F.3d 1234 (11th Cir. 2008) (relying on a pre-CAFRA case to permit the Government's use of hearsay).

The Government does not really argue that it can rely on hearsay, and *$92,203* convincingly makes the case that upping the proof burden from probable cause (an area where courts traditionally consider hearsay) to a preponderance standard (the typical civil case persuasion burden), along with other textual comparative language analysis, compels exclusion of hearsay. Plaintiff, citing several district court cases, defends the affidavit as proper. *See* DE #27 (Reply) at 3-4. Specifically, the Government contends that the Court can consider the affidavit if the hearsay information contained therein would be admissible if the witnesses themselves were to testify at trial. *Id.* And, per Plaintiff, "Det. Ford's affidavit sets out information obtained in his investigation which would be admissible at trial." *Id.* at 4. Thus, per the Government, the affidavit offers proof that would, at trial, be admissible and thus can be considered here. As to the Ford affidavit, the Court almost entirely disagrees with the premise under Rule 56 and the Federal Rules of Evidence.

Federal Rule of Civil Procedure 56(c)(4) requires an affidavit based on personal knowledge:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4); *see Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (district court properly disregarded affidavit submitted in opposition to summary

judgment that was not based on personal knowledge and did not set forth "facts" that would be admissible into evidence).

The Court has carefully parsed all of the Ford affidavit. DE #23-5 (Ford Aff.). Almost none of it reflects, at least in the four corners of the text, personal knowledge of the affiant. The affiant does not generally aver personal knowledge. Assessing the content, the Court would discern that Ford actually observed certain limited facts related to surveillance (¶ 2), and vehicle particulars (¶ 7, including sighting the Ford truck on the property). He spoke with law enforcement from Texas (¶ 8) and the local bank (¶ 11), and he heard from witness Mays (¶ 12). However, the critical facts in those latter paragraphs are what the person speaking to Ford related, and Ford himself does not have personal knowledge of that content.[6] Indeed, all or virtually all facts in the affidavit that even arguably suggest trafficking – and certainly all facts that directly allege involvement in marijuana distribution – are outside the personal knowledge of the affiant. This includes all CI information, the Texas allegations, search details, Costigan/Melton information, and the history alleged in the Mays proffer.[7]

The Court refuses to consider, under the Rule 56 rubric, the content of the affidavit to the extent it reflects lack of personal knowledge. This dovetails with the hearsay analysis. A Rule 56 affidavit must fairly present evidence that will be admissible at trial. The Government here may be able to get the substance of the critical proof in, but it surely will not be through Ford as a witness. The Texas officer, or CI, or Costigan, or

---

[6] Thus, while Ford properly avers what he knows, the secondary declarant's statement still must find a supporting hearsay exception.

[7] The Dawkins affidavit, which purports by its terms only to reach the level of probable cause, has similar vulnerabilities. Dawkins likely has no germane personal knowledge at all, premised on the affidavit language.

11

Mays could testify and probably facilitate the various proof, but Ford as conduit reflects hearsay at every turn. The Rules of Evidence would not let Ford testify to the content of the affidavit, almost all of which clearly is hearsay under Rule 802. The Court cannot rely upon inadmissible hearsay as a basis for a summary judgment decision. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("Hearsay evidence . . . must be disregarded.") (internal quotation marks and citation omitted); *United States v. One 1973 Chevrolet Impala*, 640 F. Supp. 2d 993, 998 (W.D. Tenn. 2009) (rejecting hearsay evidence as forfeiture basis: "The Government does not indicate under what hearsay exception the assertion might be admissible, nor is such an exception readily apparent to the Court."). As stated in *$92,203*:

> We therefore agree with the lower courts that have directly addressed this issue and hold that courts may no longer rely on hearsay (absent an exception to the hearsay rule) when deciding the merits of a civil forfeiture proceeding brought under CAFRA. Instead, any affidavits submitted by the parties must be based on personal knowledge

*$92,203.00*, 537 F.3d at 510.

To the extent the United States relies on *United States v. 3402 53rd Street West*, 178 Fed. App'x, 946, 948 (11th Cir. 2006), that case cites pre-CAFRA law for the proposition that hearsay is proper. *See also United States v. 2004 Blue Lexus GX470*, No. C08-5084BHS, 2008 WL 2224308, at *3 (W.D. Wash. May 27, 2008) (involving court assessment of motion to strike affidavit discussing alleged observed facts and law enforcement expertise in context of **claimant's** partial summary judgment motion). Plaintiff's reliance on *United States v. $70,150.00 in U.S. Currency*, 2009 WL 3614871, *3-*6 (S.D. Ohio Oct. 28, 2009), is also misplaced. In that case, the Government established very specific exceptions to the hearsay rule. *See id.* (finding admissibility of

12

hearsay statements under the exceptions for public records and investigative reports in Rule 803(8), (22)). The United States simply does not establish that, on the strength of this affidavit, the information contained within Ford's affidavit would be admissible at trial.

The Government's lone argument at getting around the hearsay problem is the residual exception of Rule 807. That is a Hail Mary; Rule 807 is not nearly so broad. The United States cursorily, and citing no cases, references the exception as a panacea here, presumably because law enforcement alone gives the alleged proof credibility. FRE 807 can except a hearsay statement, even if the statement is not otherwise covered by an express hearsay exception [as contained in Rule 803 or 804], if:

> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). Under subsection (b), the proponent must give notice of the party's intent to offer the statement. *Id.* at (b).

Under the Government's theory, the information is "probative and inherently reliable because it was obtained during the course of investigation by a law enforcement officer. Moreover, the claimant is not disputing the truth of the matter asserted and has offered no evidence to refute the officer's report. Therefore, the interests of justice are best served by the Court's consideration of this statement." DE #27 (Reply) at 4-5.

The United States fails to justify application of Rule 807. The hearsay-laden affidavit plainly would be a less probative form of evidence than direct testimony from

the underlying declarants. This implicates(a)(3). Further, while the Court does not necessarily question Det. Ford's reliable recitation of what he has heard, that adds nothing to the credibility of the underlying declarants. Thus, the Government has not established required "equivalent circumstantial guarantees of trustworthiness" under (a)(1). It would not be in the best interests of justice to make a ruling of consequence built on hearsay, particularly when the United States has access to, and can present for assessment at trial, witnesses with personal knowledge about the material facts in the case.

*B. The Government has not established a basis for summary judgment – the res is not forfeitable as a matter of law on this record.*

On the current record, which includes the limited nature of Detective Ford's affidavit, summary judgment is not appropriate. Simply put, the Government has not shown an absence of factual issues as to forfeitability of the res.

The majority of Plaintiff's proof is circumstantial. This can be appropriate under CAFRA, but fails here. Detective Ford personally conducted surveillance of Enriquez and his residence, noting that Enriquez "carefully watched for followers." DE #23-5 (Ford Affidavit) at 2 ¶ 2. Further, on one occasion, Enriquez pulled over, exited his vehicle, and examined his tires, as a pretext, while allegedly eyeing the road for surveillance. *Id.* While perhaps suspicious, nothing in Enriquez's observed behavior suggests direct ties to trafficking.

At best, the United States establishes probable cause, premised upon the state search warrant and warrant affidavit and the Woodford Circuit Court indictment. *See* DE #23-9 at 66-77. The state indictment, later dismissed in lieu of federal prosecution,

charges possession of drug paraphernalia and possession of marijuana. *Id.* at 66-67. The search warrant, issued on March 25, 2013, purports to find probable cause to search for "marijuana, . . . . monies . . . .or any drug paraphernalia which may tend to indicate the illegal possession of, illegal use of or the illegal trafficking in a controlled substance as defined by the [KRS]." *Id.* at 71. These materials alone, which Claimant herself produced in discovery, but the Plaintiff filed in support of the instant motion, fall well short of the applicable Rule 56 burden.

To be sure, the financial records are not without suspicion. The res at issue is just under $65,000. La Chiquita Grocery Store's 2014 year-to-date earnings as of April 30, 2014, were -$10,269.83. DE #23-4 (La Chiquita Income Statement). Further, law enforcement seized $11,564.78 in cashier's checks during the March 2013 search. *See* DE #23-9 (search inventory); *see also* DE #23-6 (cashier's checks). Enriquez's 2011 1099s show total earnings of $16,280.75. DE #23-7 (1099s). The Court does not view these records in a vacuum, however, and notes that law enforcement searched the residence and seized the cash in early 2013. The record is silent on La Chiquita's 2013 earnings as well as Enriquez's 2012 and 2013 1099s. Although an insufficient amount of legitimate income can, in combination with other factors, be inadequate to explain a significant cash seizure and thus theoretically warrant summary judgment, such is not the case here. The full financial record is simply unknown; the Government did not submit sufficient information for the Court to infer a lack of legitimate income source. *Cf. United States v. $118,170 in U.S. Currency*, 69 Fed. App'x 714, 717 (6th Cir. 2003) (citing as a factor in affirming summary judgment the claimant's "sketchy financial history," including tax returns showing disproportionately low earnings relative to the amount of

15

cash seized); *see also $147,900.00*, 450 Fed. App'x at 264 ("Finally, Bailey has no reported income or work history that could explain the large amount of currency in his possession." (citation omitted)).

Additionally, and undercutting any inferences the Court might make about the financial documents, Claimant testified in deposition that the $64,495 seized belongs to her. DE #23-2 (Claimant Depo.) at 7 ("Q. Are you claiming the sixty-four thousand four hundred and ninety-five dollars belongs to you, the money that was seized by the Law Enforcement? A. Yes."). Further, she indicated that she generally stored her money wrapped in thousand dollar bundles. *Id.* at 9 ("Q. In the money that was seized do you know that there were several amounts of the money wrapped in one thousand dollar bundles? A. Yes. Q. Do you generally store your money in that manner? A. Yes.").

Per Alday, approximately $40,000 of the seized funds was from Enriquez's (and her) business. *Id.* ("Q. In response to your request for admissions you stated that the money found in the hall closet, the forty thousand dollars, approximately forty thousand dollars in the hall closet, did you state that the money was from Luis Enriquez's business of work that he was doing? A. Yes."). She further denied that the money belonged solely to Enriquez. *See id.* ("Q. Did this money belong to Luis Enriquez? A. Exactly to Luis, no."). Per Alday, at least $10,610 of the funds came from the store. *Id.* at 10; *see also id.* at 17 ("Q. Let me ask you, where did the money, the money that Law Enforcement seized, where did that money come from? A. The store. Q. The store, which store? A. La Ciquata."). Some, if not "most" of the money titularly belonged to Enriquez from either the store or his work in mechanics, towing, or tobacco. *Id.* at 25. 2012 store figures, a

period of ownership transition but likely joint operation, suggest positive net cash generation. DE #23-9 (2012 LaChiquita Income Statement) at 10.

The Court does not question the suspicion of the United States, and a properly supported showing by the Government likely will amplify the concerns and may rule the day. However, with the drug-related portions of the affidavit stricken, the United States simply has not made the first-stage showing in the case. To be entitled to summary judgment, the Government must first show an absence of material fact questions as to the basic forfeitability of the res. The affidavit limitation drains the record of all competent drug-specific proof. Failure to cross the summary judgment initial hurdle is fatal to the motion of the United States. *See $92,203.00*, 537 F.3d at 510 (striking hearsay-based affidavit in summary judgment context and noting: "Without Agent Pena's affidavit, the Government is left with no admissible evidence in support of its motion for summary judgment and has not established that it is entitled to a judgment of forfeiture as a matter of law." (footnote omitted)); *id.* at 507 (addressing Government's initial burden as movant for summary judgment in forfeiture context); *$174,206.00*, 320 F.3d at 662 (noting that respondent faces burden only if United States succeeds initially: "[i]f the government meets its burden, it will prevail unless the claimants introduce evidence to support their case.").[8]

---

[8] The Court makes a few additional observations. The Government spent virtually its entire reply focused on discussion of the dog sniff. First, the evidence of the sniff result is, again, hearsay. Further, nothing in the record in any way substantiates the reliability of the involved canine. Finally, the brief's discussion targets a narcotics positive and the issues relating to cocaine detection; the Court stresses the precision needed in assessing summary judgment – the theory is one of marijuana trafficking by Enriquez, so the relevance of the cocaine discussion is questionable here.

*C. Claimant has, for the purpose of summary judgment, established standing.* [9]

A claimant in a civil forfeiture action bears the burden of establishing standing. *United States v. 1978 Cessna Turbo 210*, 182 F.3d 919, *3 (6th Cir. 1999) (table). Article III standing requires "a colorable ownership, possessory or security interest in at least a portion of the defendant property." *Id.* (quoting *United Sates v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998)). Here, Alday must "'claim a facially colorable interest in the seized property.'" *Id.* (quoting *United Sates v. $515,060.42*, 152 F.3d at 497). She may prove her interest by demonstrating either "'actual ownership, control, title, [or] financial stake.'" *Id.* (quoting *United States v. One 1945 Douglas C-54 (DC-4) Aircraft*, 547 F.2d 864, 866 (8th Cir. 1981)). At the summary judgment stage,[10] the issue is whether "'a fair-minded jury' could find that the claimant had standing on the evidence presented." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting *Liberty Lobby, Inc.*, 106 S. Ct. at 2512).

Here, Enriquez and Alday have been in a relationship for approximately 10 years and have cohabitated at the Midway address for approximately 8 years. DE #23-2 (Alday Depo. Tr.) at 4. Although not married, they have three children together. *Id.* Alday, the owner of La Chiquita since January 2013, has worked there for three years. *Id.* at 5, 25. She variously described the cash as the couple's savings over a lengthy period, DE #23-2 (Alday Depo.) at 24, as related to the store the couple owned and operated, *id.* at 10, 17,

---

[9] The Court limits its discussion to Article III standing and does not discuss statutory standing; the United States questions the ownership interest of Claimant, not her compliance with statutory claim mechanics.

[10] At trial, Alday must, under CAFRA, demonstrate her ownership within the meaning of the statute. CAFRA defines "owner" as a "person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A).

21, and as related to Enriquez's other work, *id.* at 25-26. Her verified claim attributed the funds to the business. DE #6 (Verified Claim). Certainly, the funds were in her home and in her possession, custody, and control. There undoubtedly are substantial questions about her rights to and the source of the cash, but at this stage, the record proof shows at least a colorable claim to a significant portion of the res. If, in fact, the funds were jointly saved by the couple and/or result from the joint ownership or operation of the business – something that a factfinder will assess – then Alday properly has standing as a claimant before the Court.[11] The Court further notes that there is a gap period between Enriquez's nominal ownership and Alday's, when the store may have generated funds and been held as a partnership. The 2012 earnings show a significant potential net cash product. *See* DE #23-9 (2012 LaChiquita Income Statement) at 10. This simply indicates that there are questions over res origination and Alday's relative rights.

**IV. Conclusion**

For the reasons stated herein, the Court **DENIES** Plaintiff's motion for summary judgment (DE #23).

This the 27th day of October, 2014.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

---

[11] Whether the United States is making this as a standing argument or a failure of innocent owner defense is unclear. The Court treats it as a standing issue at this point. The Government's failure on the initial summary judgment burden keeps the Court from reaching the merits of the innocent owner analysis.